MRS. MARY SHAW v. ROSE'S STORES, INC., AND R. M. (FALL) FAW

No. 7412SC254

(Filed 19 June 1974)

False Imprisonment § 2; Libel and Slander § 16— stopping customer to examine sweater — insufficiency of evidence of false imprisonment, slander

Plaintiff's evidence was insufficient for the jury in an action against a department store and its assistant manager for false arrest and slander where it tended to show that immediately after plaintiff left the store the assistant manager requested that plaintiff return to the store so that he could examine the inside of the sweater she was wearing, that plaintiff returned to the store and willingly exhibited the sweater to the assistant manager, that the assistant manager told plaintiff the cashier thought plaintiff had stolen the sweater because it still had a size tag attached to the back of it, and that the assistant manager admitted that the sweater did not belong to the store and returned it to plaintiff.

APPEAL by plaintiff from *Canaday, Judge,* 23 October 1973 Civil Session, CUMBERLAND County Superior Court.

Heard in the Court of Appeals 28 May 1974.

Plaintiff instituted this action to recover compensatory and punitive damages for false arrest and slander.

At the close of the plaintiff's evidence, the defendants moved under Rule 50 of the Rules of Civil Procedure for a directed verdict as to both causes of action. This motion was allowed and plaintiff's action was dismissed.

*James R. Nance for plaintiff appellant.*

*Anderson, Nimocks and Broadfoot by Henry L. Anderson for defendant appellees.*

CAMPBELL, Judge.

The plaintiff's evidence, when taken in the light most favorable to the plaintiff, as we are required to do in this situation, establishes:

1. Plaintiff is a deputy sheriff of Cumberland County and acted as the private secretary to the sheriff. She had been employed under three different sheriffs and had been in the Sheriff's Department since 1 August 1955. Her family consisted of a daughter, her husband and an aged aunt of her husband's who lived with the family. On Saturday, 9 October 1971, plaintiff and her aged aunt went to Rose's Store in the Eutaw Shopping Center for the purpose of purchasing some bedroom shoes for another aged aunt who was in a nursing home at the time. They entered the ground floor area about 1:30 p.m. and went directly to the shoe department where they selected a pair of bedroom shoes and two pairs of hose. They did not go by the sweater counter or look at any other merchandise. They were not in the store over twenty minutes. Plaintiff was dressed in a low neck, sunback dress and had a sweater thrown around her shoulders buttoned at the top button only. She did not have her arms in the sweater sleeves and the sweater was just thrown around her shoulders. It was a new sweater which had been purchased in the late spring from another store. Plaintiff had taken the price tag off the sweater at her home but had not noticed that on the right side of the sweater in the back there was a size 34 tag.

2. Plaintiff and her aunt went through the check-out line near the door and paid for the purchases. There were about eight to ten people in the line at the cash register. There were some six or seven cash registers at the check-out counters. Plaintiff and her aunt went outside the store and took about five or six steps going towards where their automobile was parked. As plaintiff turned to see where her aunt was, the assistant manager of the store, the defendant Faw, called to the plaintiff and said, "Lady, I want to see under that sweater." Plaintiff had seen Faw in the store but had never seen him before that time. Plaintiff testified: "[S]o I just flipped it off like that. I said,

'What is this?' He said 'Will you come inside; I want to see inside the sweater.' At that time I was about five or six steps from the left of the door and that would be the east. When he said come with me I went inside." Plaintiff said she went inside because she was afraid not to. At the time Faw spoke to the plaintiff and stopped her on the street, there were some 10 or 15 people going up and down the sidewalk. Plaintiff did not notice any reaction by those people. When she got inside the store, she was directed over towards the cash register. At this time Faw told her that the cashier said that plaintiff had stolen the sweater she was wearing from the store. Faw went ahead and examined the sweater, and at that time the 34 tag was on the sweater and there was nothing else different. The tag was attached by wires stuck through and bent back. Faw admitted that it was not his sweater. Plaintiff picked the sweater up and was getting ready to throw it around her shoulders when Faw caught hold of it and pulled it off and said, "There is the reason she thought you stole it," and Faw pulled the size tag off and threw it on the floor. She testified, "At the time that I had thrown the sweater around by shoulders and he noticed that price tag, he pulled on it there and naturally pulled it off my shoulders—that pulled it off my shoulders and he held it up like that. . . . "

3. After this episode about the sweater, plaintiff informed Faw that she wanted a refund on the merchandise that she had purchased and did not want anything they had. Plaintiff threw the shoes and the hose on the counter. Faw told her that he was sorry and told her to go to the desk over the stairway and sign for it. Plaintiff thereupon went to the rear of the store to the office and found the door locked and after knocking was admitted. Plaintiff inquired as to the name of Mr. Faw and the cashier, Mrs. Pate, and the lady in the office wrote their names down for her. When asked what was wrong, plaintiff said, "I told her that they had accused me of stealing my own sweater and that I wanted to talk to . . . the manager." Plaintiff then called the sheriff's office and talked to a couple of friends in the sheriff's office. Plaintiff testified that at this time she was nervous and crying as she had never been accused of larceny before in her life. From the store the plaintiff went to her home and got in touch with her husband. Plaintiff was made nervous and was unable to sleep for several months and had to take medication for her nervous condition. She did return to her work the following Monday and has worked every day since.

4. At the time of the episode, plaintiff had her badge and pistol with her but was not in uniform. In her occupation plaintiff had had occasion to serve summonses, subpoenas and on occasions had made arrests.

5. Rose's Store is a self-service store, and there are several cashiers with several lines.

6. Numerous witnesses testified in behalf of the plaintiff as to her outstanding reputation and character and that for sometime after this episode she was nervous and upset.

Plaintiff relies upon *Hales v. McCrory-McLellan Corp.*, 260 N.C. 568, 133 S.E. 2d 225 (1963). We think the instant case is clearly distinguishable from the *Hales* case. In the *Hales* case the plaintiff was ordered to come over to a certain place and to wait there. Another employee was directed to call the police, and when the police arrived, plaintiff was taken to the police station where a warrant was issued for her and she was not released until she made bond. As pointed out in the *Hales* case, a jury could infer that the defendants, backed up by the presence and participation of two police officers whom they had called, induced the plaintiff to consider herself under restraint and to believe that any move or attempt on her part to leave the scene would not be allowed. Two of the store's employees, in the presence of police officers, accused the plaintiff of larceny. It was pointed out that a jury might find that she was justified in assuming that she was under involuntary restraint and could further find that the restraint was unlawful.

In the instant case there was nothing to indicate that the plaintiff was under any restraint at any time. She freely and voluntarily went back into the store and received an explanation as to why the cashier assumed she had taken some of the store's merchandise. To say the least, it is somewhat unusual for a person to wear a new garment with tags attached thereto similar to price tags, or in this case a size tag, but obviously a tag not meant to remain with the garment when worn. When the merchandise was examined and ascertained not to have come from the defendant store, an apology was made. From that time on, plaintiff herself published the erroneous accusations.

We think the instant case is much closer to *Black v. Clark's Greensboro, Inc.*, 263 N.C. 226, 139 S.E. 2d 199 (1964). In that case the plaintiff was requested to hand her pocketbook over to the agent of the store who then examined the contents of the

pocketbook and requested the plaintiff to remove a bracelet there-from and hand it to him. The man then examined the bracelet and inquired as to where it was purchased. The bracelet was then returned to her, and the man left. The court stated, "All she did, or was requested to do, was to open her pocketbook and submit it and the bracelet for inspection. The evidence does not disclose that she objected to the examination, but complied willingly." In the instant case the plaintiff was requested to exhibit her sweater, and this she did willingly. After the sweater was examined, it was handed back to the plaintiff with an apology. The plaintiff at all times knew she had not taken any merchandise from the store wrongfully, and the plaintiff had nothing to fear. Furthermore, the plaintiff at the time was a deputy sheriff and had a badge and pistol in her pocketbook. The judgment of dismissal is

Affirmed.

Chief Judge BROCK and Judge BRITT concur.